UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EURO PACIFIC CAPITAL, INC., individually and in its
capacity as Investor Representative and attorney-in-fact for
ALEXANDER AND YANA GALUZ, AMY J.
STEFANIK, ANN STRUVE, ANTHONY NAHUM, ART
KLEPPEN AND KIMBERLY KLEPPEN, BARBARA
ELLIS, BARBARA HEARST, BARBARA S. MEISTER,
BENJAMIN R. EARL AND JONEE D. EARL, BERT
JUDE HUNTSINGER, BLAKE AND LISA EVERETT,
BRUCE FRANKLIN, BRUCE RAVENEL, BURT YANO
AND PATRICIA YANO, CAROL COOPER, CAROLYN
R. LONG, CHARLES BRABENAC, CHARLES M.
CLAUSSEN AND MICHELLE S. CLAUSSEN,
CHARLES SULLIVAN AND CAROL SULLIVAN,
CHARLOTTE J. BELASCO, CHIN HSIAO, CINDY J.
LEWIS, CLIFF WARD, COREY SHANNON
MCNAMEE, CURTIS ANDREW BEESON AND
BRENDA BATENBURG, CYNTHIA KESSLER AND
JAMES KESSLER, DAMON SUTER AND MALINDA
SUTER, DANIEL J. GRIFFIN, DARREL LEE
KLOECKNER, DAVID ALAN SCULLY, DAVID W.
LARSON AND JENNIFER L. LARSON, DEBORAH
FOREMAN, DENNIS FRIED AND JOYCE FRIED,
DIANE D. SPOLUM, DONALD GIRARD CLARK JR.
AND DEBRA L. CLARK, DONALD T. GLASER JR.,
DOUGLAS W. JOHNSON, EDGAR SIMONS, EDWARD
CHARLES MOHR, ELIZABETH RICHARDS, ELMIRA
GADOL, FRANCIS BRENT MAY AND JONEITA JEAN
MAY, FRANK CARDILE SR., FRED HARPER, GARY
LEE BUKAMIER, GARY MARDER, GAYLE M. AND
DEBORAH SANDERS, GEORGE FELDMAN, GEORGE
K. CHING, GEORGE MADARAZ, GERALD AND
BEVERLY R BARNE, GERALD MONA, GERARD
SURERUS, GERSHOM LUNDBERG, GILBERT
DOMINGUEZ, KENNETH RAY GLEASON, HARNEK
THIARA AND TALWINDER THIARA, HEIDI W.
KIENE AND KEVIN KIENE, HENRY LOUIS
SCHAIRER JR., HOWARD W. WAHL, J. MARK
MCPHERSON, JACK AND TAMI FINEGOLD, JACK
ABRAMS AND MARGO ABRAMS, JAMES A.
SHEAHAN AND MELODY K. SHEAHAN, JAMES A.
TAMBORELLO, JAMES ALLEN LUTTER, JAMES
CURTIS BROWN, JAMES D. DREYER JR., JAMES V.

Index No. _____

**VERIFIED COMPLAINT**

BACON, JASON HANDZA AND ALEXANDRA
HANDZA, JASON L. RAWLINGS AND LEANNE K.
RAWLINGS, JEFF ARCHIBALD, JEFFREY REISNER,
JOANNE COLTRIN AND ANDRE COLTRIN, JOHN
MAVAR, JOHN T. KEALY AND JANINE K. KEALY,
JONATHAN EDWARDS AND VIRGINIA C. ADAMS,
JOSEPH MCCARTHY AND MIKI MCCARTHY, JOSH
D. BRADBURY, JR., SUSAN BRADBURY, JOSHUA
SCHEIN, JULIA L. GRIFFIN, JUSTIN KERENYI, KARL
K. SPIELMAN AND MELINDA G. ELKIN, KENNETH
NASS, KENT SCOTT AND LAURA SCOTT, KERRY
LEE AND HELEN WELSH, KEVIN P. O'NEILL AND
SUZANNE ODELL O'NEILL, KURT SWOGGER,
LARRY BRUNZLICK, LARRY E. GROFF AND DORIS
R. GROFF, LARRY GUAGLIARDO, LAURA D.
MCHUGH, LAWRENCE J. BUTZ, LAWRENCE
LEARY, LLOYD E. HENDRIX, LOUIS A. LARSON
AND PAMELA J. LARSON, MARC KASSIN, MARC W.
LEVIN, MARK A. OSTERHAUS, MARK DUGGER,
MARK R. MITCHELL, MARSHALL CARL RICE,
MARY HEINKING, MARY NEIBERG, MARYANN
MIGAS, MATT HAYDEN, MATTHEW C. AMERMAN
AND CARRIE AMERMAN, MEHRAN TASLIMI,
MICHAEL MATULA, MICHAEL SCULLY, MICHELLE
GRIFFIN, MIRIAM SCHWARTZ, MITCHELL MARTIN
AND DEBORAH MARTIN, NANCY L. BENSON,
NICOLAS KARAMAOUN, OLEKSANDR TUMKO
AND OKSANA TUMKO, PAMELA HARRINGTON
MUNRO, PAT BROWNE, PATRICK AND GLORIA
KIRK, PATRICK MULLEN, PAUL DIPAOLO AND
NANCY L. WORTHINGTON, PAUL E. SORGE JR.,
PAUL HARPER ZINK, PETER D. SCHIFF, PETER
SCHORTMANN AND SUSAN SCHORTMANN,
QUINCY MURPHY, RALPH DALE EDSON, RANDELL
SCOTT GLEASON AND MICHELE LEE GLEASON,
RICHARD MOORE, RICHARD P. ANTHONY III AND
KIMBERLY J. ANTHONY, RICHARD POTAPCHUK,
ROBERT DAGGETT, ROBERT E. CATHRO, ROBERT
HEIMANN, ROBERT L. BISHOP AND FRANCINE
BISHOP, ROBERT NEAL SPADY AND LINDA
SPADY, ROBERT T. FOSS AND MARGARET FOSS,
ROD MCINTYRE, ROYCE V. JACKSON, RUSSELL B.

WALKER, RUSSELL PARKER, SARAH J. BASLER
AND DONALD S. BASLER, SCOTT MUELLER,
SCOTT R. GRIFFIN, SCOTT R. LENNES, SHERRY
MORSE MACCABEE AND JOHN GREENBERGER
MACCABEE, SHIDAN TASLIMI, STANLEY J.
DRELICK, STEPHEN P. MCCARRON, STEPHEN
RASKIN, STEVE SMITH, STEVEN PAUL HARMS,
TERRY ALAN CREWS, TERRY OLSON AND LINDA
M. OLSON, THOMAS AARON LADNER, TIMOTHY
CARROLL, TIMOTHY CRANE, TIMOTHY NASS,
TIMOTHY WEAVER, TINA C. PETERSON AND
HENDRIKUS M. SCHRAVEN, TODD A. HANNON
AND MICHELLE L. HANNON, TONY BIZ AND
JEANNE C. LIM, VADA NOBLES, VINCE BACOLINI,
VIVEK GHAI, VLAJKO DJORDJEVIC, WALTER
FRIESEN, WILLIAM BRADLEY, WILLIAM J. CYR,
WILLIAM WILEY AND MARIANNE WILEY, WILLIS
DUNKUM III, YADIN ROZOV, and DOES 1-100,

                        Plaintiffs,

    vs.

U.S. CHINA MINING GROUP, INC. and HONGWEN LI,

                        Defendants.

Plaintiff Euro Pacific Capital, Inc. ("Plaintiff" or "Euro Pacific"), individually and

in its capacity as Investor Representative and attorney-in-fact for Alexander and Yana Galuz,

Amy J. Stefanik, Ann Struve, Anthony Nahum, Art Kleppen and Kimberly Kleppen, Barbara

Ellis, Barbara Hearst, Barbara S. Meister, Benjamin R. Earl and Jonee D. Earl, Bert Jude

Huntsinger, Blake and Lisa Everett, Bruce Franklin, Bruce Ravenel, Burt Yano and Patricia

Yano, Carol Cooper, Carolyn R. Long, Charles Brabenac, Charles M. Claussen and Michelle S.

Claussen, Charles Sullivan and Carol Sullivan, Charlotte J. Belasco, Chin Hsiao, Cindy J. Lewis,

Cliff Ward, Corey Shannon McNamee, Curtis Andrew Beeson and Brenda Batenburg, Cynthia

Kessler and James Kessler, Damon Suter and Malinda Suter, Daniel J. Griffin, Darrel Lee

Kloeckner, David Alan Scully, David W. Larson and Jennifer L. Larson, Deborah Foreman,

Dennis Fried and Joyce Fried, Diane D. Spolum, Donald Girard Clark Jr. and Debra L. Clark,

Donald T. Glaser Jr., Douglas W. Johnson, Edgar Simons, Edward Charles Mohr, Elizabeth

Richards, Elmira Gadol, Francis Brent May and Joneita Jean May, Frank Cardile Sr., Fred

Harper, Gary Lee Bukamier, Gary Marder, Gayle M. and Deborah Sanders, George Feldman,

George K. Ching, George Madaraz, Gerald and Beverly R Barne, Gerald Mona, Gerard Surerus,

Gershom Lundberg, Gilbert Dominguez, Kenneth Ray Gleason, Harnek Thiara and Talwinder

Thiara, Heidi W. Kiene and Kevin Kiene, Henry Louis Schairer Jr., Howard W. Wahl, J. Mark

Mcpherson, Jack and Tami Finegold, Jack Abrams and Margo Abrams, James A. Sheahan and

Melody K. Sheahan, James A. Tamborello, James Allen Lutter, James Curtis Brown, James D.

Dreyer Jr., James V. Bacon, Jason Handza and Alexandra Handza, Jason L. Rawlings and

Leanne K. Rawlings, Jeff Archibald, Jeffrey Reisner, Joanne Coltrin and Andre Coltrin, John

Mavar, John T. Kealy and Janine K. Kealy, Jonathan Edwards and Virginia C. Adams, Joseph

Mccarthy and Miki Mccarthy, Josh D. Bradbury, Jr., Susan Bradbury, Joshua Schein, Julia L.

Griffin, Justin Kerenyi, Karl K. Spielman and Melinda G. Elkin, Kenneth Nass, Kent Scott and

Laura Scott, Kerry Lee and Helen Welsh, Kevin P. O'Neill and Suzanne Odell O'Neill, Kurt

Swogger, Larry Brunzlick, Larry E. Groff and Doris R. Groff, Larry Guagliardo, Laura D.

Mchugh, Lawrence J. Butz, Lawrence Leary, Lloyd E. Hendrix, Louis A. Larson and Pamela J.

Larson, Marc Kassin, Marc W. Levin, Mark A. Osterhaus, Mark Dugger, Mark R. Mitchell,

Marshall Carl Rice, Mary Heinking, Mary Neiberg, Maryann Migas, Matt Hayden, Matthew C.

Amerman and Carrie Amerman, Mehran Taslimi, Michael Matula, Michael Scully, Michelle

Griffin, Miriam Schwartz, Mitchell Martin and Deborah Martin, Nancy L. Benson, Nicolas

Karamaoun, Oleksandr Tumko and Oksana Tumko, Pamela Harrington Munro, Pat Browne,

2

Patrick and Gloria Kirk, Patrick Mullen, Paul Dipaolo and Nancy L. Worthington, Paul E. Sorge Jr., Paul Harper Zink, Peter D. Schiff, Peter Schortmann and Susan Schortmann, Quincy Murphy, Ralph Dale Edson, Randell Scott Gleason and Michele Lee Gleason, Richard Moore, Richard P. Anthony III and Kimberly J. Anthony, Richard Potapchuk, Robert Daggett, Robert E. Cathro, Robert Heimann, Robert L. Bishop and Francine Bishop, Robert Neal Spady and Linda Spady, Robert T. Foss and Margaret Foss, Rod Mcintyre, Royce V. Jackson, Russell B. Walker, Russell Parker, Sarah J. Basler and Donald S. Basler, Scott Mueller, Scott R. Griffin, Scott R. Lennes, Sherry Morse Maccabee and John Greenberger Maccabee, Shidan Taslimi, Stanley J. Drelick, Stephen P. Mccarron, Stephen Raskin, Steve Smith, Steven Paul Harms, Terry Alan Crews, Terry Olson and Linda M. Olson, Thomas Aaron Ladner, Timothy Carroll, Timothy Crane, Timothy Nass, Timothy Weaver, Tina C. Peterson and Hendrikus M. Schraven, Todd A. Hannon and Michelle L. Hannon, Tony Biz and Jeanne C. Lim, Vada Nobles, Vince Bacolini, Vivek Ghai, Vlajko Djordjevic, Walter Friesen, William Bradley, William J. Cyr, William Wiley and Marianne Wiley, Willis Dunkum III, Yadin Rozov, and their assignees (collectively, the "Shareholders"), by and through its undersigned counsel, brings this Complaint against Defendants U.S. China Mining Group, Inc., ("China Mining" or the "Company"), a Nevada Corporation, and Hongwen Li ("Mr. Li" and referred to collectively with China Mining as "Defendants"), and allege as follows:

## PARTIES

1.      Plaintiff Euro Pacific Capital Inc. is an investment company incorporated under the laws of the state of California, with its principal place of business in Westport, Connecticut. Euro Pacific is the Investor Representative and placement agent for the securities purchase agreement (the "SPA") wherein the Shareholders invested in China Mining.

3

2.      Defendant China Mining is a publicly held corporation organized and incorporated under the laws of Nevada.  China Mining's registered agent, Anderson Registered Agents, is located at 3225 McLeod Drive #110, Las Vegas, Nevada 89121.  China Mining operates in the People's Republic of China ("PRC") with its headquarters located at 15310 Amberly Drive Suite 250, Tampa, Florida 33647.

3.      Defendant Hongwen Li is the President and Chief Executive Officer ("CEO") of China Mining and resides at 178 HuaShan Rd., Nan Gang Qu, Harbin, P.R. China 150090.

## JURISDICTION AND VENUE

4.      This Court has proper subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and cost.  This Court also has proper subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims asserted arise pursuant to Sections 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated under 17 C.F.R. § 240.10b-5.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391, because the Defendants are subject to this court's personal jurisdiction pursuant to the forum selection clause in the contracts at issue.

## BACKGROUND FACTS

## I.      China Mining's Business and Corporate Structure.

6.      China Mining is engaged in coal production and sales by exploring, assembling, assessing, permitting, developing and mining coal properties in the PRC.  After obtaining permits from the Heilongjiang Province National Land and Resources Administration

4

Bureau and the Heilongjiang Coal Production Safety Bureau, the Company extracts coal, and then sells most of the coal on a metric ton basis for cash on delivery.

7.      Through the end of March 2008, China Mining's business consisted of the operations of its Tong Gong coal mine through its subsidiary, Heilongjiang Tong Gong Mining Co., Ltd. ("Tong Gong"), a PRC limited liability company and the operator of Tong Gong coal mine. The Tong Gong coal mine is located approximately 175 kilometers southwest of the city of Heihe in the Heilongjiang Province of the PRC.

8.      On December 31, 2007, China Mining entered into an agreement to acquire two mining companies in the PRC, Heilongjiang Xing An Group Hong Yuan Coal Mining Co., Ltd. ("Hong Yuan") and Heilongjiang Xing An Group Sheng Yu Mining Co., Ltd. ("Sheng Yu", and with Hong Yuan collectively referred to as "Xing An" or the "Xing An Companies"). The Xing An Companies operate two coal mines, the Hong Yuan and Sheng Yu mines, located in the city of Mohe in Heilongjiang Province of the PRC.

9.      Hong Yuan was organized as an LLC under the laws of the PRC on August 18, 2003. Hong Yuan's registered address is Xilinji Town, Mohe County, Daxing'an Mountain District, Heilongjiang Province of the PRC.

10.     Sheng Yu was originally organized as an LLC under the laws of the PRC on July 28, 2003. Sheng Yu's registered address is Cross Area between Zhenxing Road and Zhonghua Road, Xilinji Town, Mohe County, Daxing'an Mountain District, Heilongjiang Province of the PRC.

11.     China Mining completed its acquisition of the Xing An Companies on April 4, 2008, after which its business now consists of the operations of the Tong Gong coal mine and the two Xing An coal mines.

**II.    China Mining's Presence in the United States.**

12.    China Mining was incorporated in the State of Nevada in 2001.

13.    China Mining's registered agent, Anderson Registered Agents, is located

at 3225 McLeod Drive #110, Las Vegas, Nevada 89121.

14.    China Mining's headquarters are located at 15310 Amberly Drive Suite

250, Tampa, Florida 33647.

**III.   China Mining Raised Capital on U.S. Markets then Went "Dark," Breaching Its
        Obligations to Report under the Exchange Act Pursuant to the SPA.**

15.    On or about January 7, 2011, the Shareholders entered into the SPA with

China Mining whereby the Shareholders purchased an aggregate of 3,750,000 units of the

Company at a purchase price of $4.00 per unit for payment of an aggregate purchase price of

$15,000,000. Each unit consisted of shares of (i) one share of our common stock, par value

$0.001 per share, and (ii) a five-year warrant (the "Investor Warrant") to purchase 0.5 shares of

our common stock at an exercise price of $6.80 per share.

16.    Under the SPA, Euro Pacific is the "Investor Representative" and

"Placement Agent" of all Shareholders and is their lawful agent and attorney-in-fact to act on

their behalf.

17.    On or about February 14, 2011, China Mining filed a Form S-1

Registration Statement (the "Registration Statement") with the Securities and Exchange

Commission ("SEC"). China Mining's common stock, par value at $0.001 per share, first began

trading on the Over-The-Counter Bulletin Board, OTCBB, and is now traded on the Over-The-

Counter Quality Board, OTCQB, under the symbol "SGZH".

18.    Section 4.2 of the SPA contains salient provisions pertaining to China

Mining's obligation to report, including the following:

6

4.2. Furnishing of Information. As long as any Investor or any transferee owns any Securities, the Company covenants to timely file (or obtain extensions in respect thereof and file within the applicable grace period) all reports required to be filed by the Company after the date hereof pursuant to the Exchange Act.

19.     Subsequent to the execution of the SPA and from May 15, 2012 to August 15, 2014, China Mining filed eight (8) Form 12B-25 notifications of its inability to timely file annual and quarterly reports with the SEC (referred to respectively as "10-Ks" and "10-Qs").

20.     Most notably, China Mining's last document filed with the SEC was a 12B-25 notification of its inability to timely file its 10-Q for the quarter ending June 30, 2014.

21.     China Mining's deadline for filing its 10-Q was August 14, 2014, and the applicable grace period expired on August 30, 2014.

22.     China Mining failed to file its 10-Q by the August 30, 2014, and has yet to file or make available its 10-Q for the quarter ending June 30, 2014.

23.     The last 10-K or 10-Q China Mining filed was its 10-Q for the period ending March 31, 2014, which it filed on May 20, 2014.  Since then, China Mining has refused to provide any reports either publically, to Euro Pacific, or to the Shareholders.

24.     The sections of the SPA that obligate China Mining to report are designed to ensure that a market exists for the issued securities and that the securities themselves are transferable. China Mining's failure to report not only deprives the Shareholders of the ability to ascertain the present fair value of their equity holdings, but also deprives other market participants of the same. China Mining's breach of its reporting obligations and covenants under the SPA has caused the complete illiquidity of the issued securities due to market participants' inability to ascertain the present fair value of the Company's shares.

7

25.     As a result of China Mining "going dark," the Shareholders are deprived

of a market to sell their investment, as any decision to buy, sell, or hold by all market

participants is rendered impossible.

## IV.     Defendants Made Material Misrepresentations and Omissions of Material Fact Regarding the Use of Proceeds as Mr. Li's Misappropriation of the SPA Proceeds.

26.     In light of Mr. Li's misappropriation, Defendants violated their covenant

relating to the use of proceeds from sale of the securities under the SPA and made material

misrepresentations and omissions of material facts in various transaction documents relating to

the SPA, including the SPA itself.

27.     Section 4.9 of the SPA contains salient provisions pertaining to use of

proceeds, including the following:

> 4.9.      Use of Proceeds. The Company will use the net proceeds from the sale of the Securities hereunder to support capital expenditures, provide capital for acquisition opportunities and for working capital, and not for the satisfaction of any portion of the Company's debt (other than payment of trade payables and accrued expenses in the ordinary course of the Company's business and consistent with prior practices), or to redeem any Common Stock or Common Stock Equivalents.

Section 4.9 omits any implication that the SPA proceeds would be used to satisfy the personal

debts of any officer or director.

28.     Further, the definition of "Proceeds" under the Article 1 of the SPA states:

> "**Proceeds**" means approximately $10,000,000 to $15,000,000 (the "**Gross Proceeds**") of the Offering which, net of expenses, will be utilized by the Company for capital expenditures, acquisitions and general corporate purposes.

Similar to Section 4.9, Article 1 omits any implication that the SPA proceeds would be used to

satisfy the personal debts of any officer or director.

8

29.     China Mining also filed a Form D with the SEC on January 19, 2011 (the "Form D"), which was signed by Mr. Li himself.  The Form D expressly states that no portion of the SPA offering proceeds would be paid to any officer or director, and the Form D specifically identified Mr. Li as an officer and director.

30.     The Registration Statement also states that "[w]e intend to use such proceeds for working capital and other general corporate purposes," but does not to mention that any portion of the SPA proceeds would be paid to their officers or directors.

31.     Further, China Mining's Offering Memorandum and Press Releases regarding the intended use of proceeds expressly prohibit the transfer of SPA proceeds to China Mining's officers or directors.

32.     Notwithstanding Section 4.9 and Article 1 of the SPA, the Form D and Registration Statement filed by China Mining, the Offering Memorandum, and Press Releases, Hongwen Li, China Mining's President and Chief Executive Officer, misappropriated two million eight hundred thousand dollars ($2,800,000) of the SPA proceeds by way of a direct payment to himself shortly after conclusion of the offering.

33.     A significant portion of these funds were diverted by Mr. Li for purposes of paying down various personal financial obligations, including gambling debts he accumulated through Las Vegas gaming activities.

34.     Despite Defendants' knowledge, they disregarded these material misrepresentations and omissions of material fact.

## V.     China Mining's Illegal Investment in Majestic Machinery, Inc.

35.     Shortly after Mr. Li's misappropriation of this $2,800,000, China Mining took out a bank loan in the amount of $3,000,000 for purposes of providing those funds to a

9

sham company located in the United States called Majestic Machinery, Inc. ("Majestic"), incorporated in the State of California on February 2, 2007.  Majestic does not appear to have any credible nexus to coal mining or brokering activities.

36.     China Mining has failed to detail or otherwise disclose this transaction in its subsequent 10-Ks and 10-Qs, and upon information and belief, this transaction has brought no return on investment.

## VI.     Injury to Euro Pacific

37.     In its capacity as Placement Agent, Plaintiff Euro Pacific is a third party beneficiary to the SPA.

38.     As a result of Defendants' breach the SPA by, *inter alia*, failing to report its financials and "go dark", Plaintiff Euro Pacific suffered damages.  Namely, as discussed in greater detail below, Plaintiff Euro Pacific was damaged as a result Defendants' actions (and inactions), as it suffered business losses, reputational harm, and incurred substantial attorney's fees and costs for Defendants' tortious breach.

39.     Defendant was aware of the benefits that Euro Pacific would receive as a third party to the SPA and intended for Euro Pacific to act as the Placement Agent.

40.     Euro Pacific invested a substantial amount of time and money in acting as the Placement Agent for its clients or Shareholders in this investment in China Mining, Euro Pacific made these investments in research, due diligence, consulting, and development and marketing.

41.     Additionally, as a result of Defendants' breach of the SPA, Euro Pacific suffered damage to its reputation within the investment industry as shown through a loss of business from aggrieved customers following the breach.  Moreover, intangible assets such as

10

brand name, intellectual capital, unique market position, and established networks comprise exceptionally important assets to Euro Pacific.

42.     Euro Pacific has built its goodwill upon, *inter alia*, its customer base, client relations, reputation for solid investment strategy along with the reputation of Peter Schiff within the media and finance industry.  Mr. Schiff is Euro Pacific's CEO and Chief Global Strategist, as well as its public figurehead.  The goodwill and reputation of broker-dealers and investment professionals are intrinsically valuable, especially in Euro Pacific's case when it comes to international investments.

43.     Euro Pacific's and Peter Schiff's goodwill and concomitant reputation have been detrimentally affected and tarnished by the breach of the SPA.  This is particularly salient for this matter concerning international investments, as it is closely tied to Euro Pacific and Mr. Schiff's recognized expertise, sophistication and status in the finance industry.

## VII.   Attorneys' Fees

44.     Section 6.9 of the SPA, provides in relevant part, that:

> If either party shall commence a Proceeding to enforce any provisions of a Transaction Document, then the prevailing party in such Proceeding shall be reimbursed by the other party for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution of such Proceeding.

45.     China Mining – via, *inter alia*, its failure and refusal to report under the Exchange Act pursuant to the SPA, Mr. Li's conversion of $2,800,000 of funds raised by the SPA, China Mining's subsequent procurement of a $3,000,000 bank loan, and ultimate transmission of those loan proceeds to its sham company, Majestic – fraudulently induced the Shareholders to provide capital to China Mining and breached the SPA.

46.     Thus, Plaintiff is entitled to reasonable attorneys' fees and all costs and expenses incurred with the investigation, preparation, and prosecution of their claims.

### FIRST CAUSE OF ACTION
### (DEFENDANTS' BREACH OF CONTRACT)

47.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 46 as if fully set forth herein.

48.     On or about January 7, 2011, Euro Pacific, the Shareholders, and China Mining properly executed and entered the SPA.  It is binding and enforceable.

49.     Euro Pacific and the Shareholders have performed all conditions, covenants, and promises required by them to be performed in accordance with the terms and conditions of the SPA, including, *inter alia*, investing $15,000,000 in the Company.

50.     *Inter alia*, Defendants breached the SPA by failing and refusing to report to the SEC under the Exchange Act, or otherwise reporting to the Shareholders and public.

51.     Defendants also breached the SPA by Mr. Li's misappropriation of the offering proceeds that Defendants represented would be used as capital for China Mining's expenditures, acquisition opportunities, and working capital.

52.     Defendants' breach of the Company's reporting obligations has divested the Shareholders of their ability to ascertain the fair market value of their investment, thereby rendering any decision to buy, sell, or hold impossible.  Similarly, as China Mining ceased reporting to the SEC, other market participants cannot value their investments thereby also rendering their ability to enter into transactions impossible.  As a result, no market exists for the Shareholders to exit their investment, and they are left with illiquid and non-transferable share in China Mining.

53.     Defendants' breach of the Company's obligations to use the SPA proceeds as capital infusion for the Company and Mr. Li's misappropriation of SPA proceeds. This misappropriation deprived China Mining of a substantial capital infusion that was intended to finance the Company's expenditures, acquisition opportunities, and working capital.

54.     As a result of Defendants' breaches of the SPA, Euro Pacific and the Shareholders have suffered and will continue to suffer damages. Defendants' breaches of the SPA with the Shareholders have actually and proximately caused damage to Euro Pacific and the Shareholders in an undetermined amount to be proven at trial.

55.     As a result of Defendants' breaches of the SPA, Euro Pacific and the Shareholders are entitled to China Mining's books and records.

56.     As a result of Defendants' breaches of the SPA, the Shareholders are entitled to an option to "put" their shares at fair market value.

## SECOND CAUSE OF ACTION
## (BREACH OF COVENANT)

57.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 56 as if fully set forth herein.

58.     As more particularly set forth above, Defendants covenanted that the Company would timely file all reports required to be filed under Exchange Act pursuant to the SPA.

59.     Defendants breached the SPA, *inter alia*, by failing and refusing to report to the SEC under the Exchange Act, as China Mining's last financial report filed with the SEC was the 10-Q for the quarter ending March 31, 2014.

13

60.     As a result China Mining's breach of its reporting covenant in the SPA, Euro Pacific and the Shareholders have suffered, and will continue to suffer, irreparable injury in that, *inter alia*, the Shareholders cannot ascertain the fair market value of their investment and no market exists for them to exit their investment.

61.     As a result China Mining's breach of its reporting covenant in the SPA, Euro Pacific and the Shareholders are entitled to a mandatory injunction requiring China Mining to report to the SEC under the Exchange Act pursuant to the SPA.

### THIRD CAUSE OF ACTION
### (DEFENDANTS' BREACH OF THE COVENANT OF
### GOOD FAITH AND FAIR DEALING)

62.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 61 as if fully set forth herein.

63.     All contracts governed by the law of the State of New York include an implied covenant of good faith and fair dealing.

64.     As Investor Representative and attorney-in-fact of all Shareholders, Euro Pacific is heavily dependent on the level of success and satisfaction of its clients—i.e. the Shareholders.

65.     The success and satisfaction of the investments derived from the SPA directly impacts Euro Pacific's ability to generate a profit from its investor clients.

66.     As more particularly set forth above, Defendants breached the covenant of good faith and fair dealing implicit in the SPA by, *inter alia*, failing to adequately inform the investors of relevant operational and financial changes or transactions, including its failure and refusal to file all reports required pursuant to the Exchange Act.

14

67.     Defendants also breached the covenant of good faith and fair dealing implicit in the SPA by Mr. Li's misappropriation of the SPA offer proceeds that Defendants represented would be used as capital for China Mining's expenditures, acquisition opportunities, and working capital.

68.     *Inter alia*, Defendants' breach of the covenant of good faith and fair dealing has prevented the Shareholders from receiving the benefits of the SPA, as the Company's common stock purchased by the Shareholders is now illiquid and no market exists for these securities.

69.     Defendants' breach of the covenant of good faith and fair dealing has deprived China Mining of a substantial capital infusion that was intended to finance the Company's expenditures, acquisition opportunities, and working capital.

70.     As a result of Defendants' breach of the covenant of good faith and fair dealing implicit in the SPA, Euro Pacific and the Shareholders have suffered and will continue to suffer damages.  Defendants' breaches of the SPA have actually and proximately caused damage to Euro Pacific and the Shareholders in an undetermined amount to be proven at trial.

71.     Defendants' breach has also actually and proximately caused Euro Pacific and the Shareholders to suffer damages in at least $1,000,000.00.  Namely, Euro Pacific was damaged as a result Defendant's actions (and inactions), as it suffered business losses, reputational harm, and incurred substantial attorneys' fees and costs directly caused by Defendants' breach.

72.     As a result of Defendants' breach of the covenant of good faith and fair dealing implicit in the SPA, Euro Pacific and the Shareholders are entitled to China Mining's books and records.

15

73.     As a result of Defendants' breach of the covenant of good faith and fair dealing implicit in the SPA, the Shareholders are entitled to an option to "put" their shares at fair market value.

### FOURTH CAUSE OF ACTION
### (EURO PACIFIC – DEFENDANTS' BREACH OF
### CONTRACT-THIRD PARTY BENEFICIARY)

74.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 73 as if fully set forth herein.

75.     Euro Pacific was a third party beneficiary to the SPA as the Investor Representative and Placement Agent.

76.     As Placement Agent of all Shareholders, Euro Pacific is heavily dependent on the level of success and satisfaction of its clients—*i.e.* the Shareholders.

77.     The success and satisfaction of the investments derived from the SPA directly impacts Euro's ability to generate a profit from its investor clients.

78.     As more particularly set forth above, Defendants' breach the SPA by, *inter alia*, failing to report its financials, "going dark," and misappropriating proceeds of the SPA, proximately caused Euro Pacific to suffer damages.  Namely, Euro Pacific was damaged as a result Defendants' actions (and inactions), as it suffered business losses, reputational harm, and incurred substantial attorneys' fees and costs directly caused by Defendants' breach.

79.     As a result of Defendants' breaches of the SPA, Euro Pacific is entitled to damages of at least $1,000,000.00.

### FIFTH CAUSE OF ACTION
### (DEFENDANTS' FRAUD)

80.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 79 as if fully set forth herein.

16

81.     As more particularly set forth above, Defendants knowingly, improperly, and intentionally made, or permitted to be made, false representations of fact that no portion of the SPA offering proceeds would be paid to their officers or directors.  These misrepresentations appear in, *inter alia*, Section 4.9 and Article 1 of the SPA, the Form D, the Registration Statement, the Offering Memorandum, and the Press Releases.  More specifically, the Form D expressly states that no portion of the SPA offering proceeds would be paid to any officer or director, and the Form D expressly identifies Mr. Li as an officer and director.

82.     Defendants knowingly, improperly, and intentionally made, or permitted to be made, false representations of fact and covenanted that that the Company would comply with its reporting requirements under the Exchange Act pursuant to the SPA.

83.     Euro Pacific and the Shareholders justifiably and detrimentally relied on Defendants' misrepresentations that the proceeds of the SPA would be used as capital for China Mining's expenditures, acquisition opportunities, and working capital.

84.     Euro Pacific and the Shareholders also justifiably and detrimentally relied on Defendants' covenant to timely file these reports with the SEC so that a market would exist for the Company's common stock.

85.     As a result of their reliance on Defendants' misrepresentations, Euro Pacific and the Shareholders were induced to invest $15,000,000 in the Company.

86.     Despite Defendants' representation that the SPA proceeds would be used as capital for China Mining's expenditures, acquisition opportunities, and working capital, Mr. Li illegally and fraudulently transferred to himself $2,800,000 of SPA proceeds shortly after the execution of the SPA.

17

87.     Despite Defendants' representation that the Company would timely file all reports required to be filed under the Exchange Act, China Mining's last financial report filed with the SEC was a 10-Q for the quarter ending March 31, 2014.

88.     As a direct and proximate result of Mr. Li's misappropriation, he deprived China Mining of a substantial capital infusion that was intended to finance the Company's expenditures, acquisition opportunities, and working capital.

89.     As a direct and proximate result of China Mining's failure and refusal to report under the Exchange Act, Defendants have caused the issued securities to be completely illiquid due to market participants' inability to ascertain the present fair value of the Company's shares.

90.     As a direct and proximate result of Defendants' fraud, Euro Pacific and the Shareholders have suffered and will continue to suffer damages.  Defendants' breaches of the SPA have actually and proximately caused damage to Euro Pacific and the Shareholders of at least $1,000,000.00.

91.     As a direct and proximate result of Defendants' fraud, Euro Pacific and the Shareholders are entitled to China Mining's books and records.

92.     As a direct and proximate result of Defendants' fraud, Shareholders are entitled to an option to "put" their shares at fair market value.

### SIXTH CAUSE OF ACTION
### (DEFENDANTS' FRAUDULENT INDUCEMENT)

93.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 92 as if fully set forth herein.

18

94.     As more particularly set forth above, Defendants knowingly, improperly, and intentionally made, or permitted to be made, false representations of fact that no portion of the SPA offering proceeds would be paid to their officers or directors, which appear in, *inter alia*, Section 4.9 and Article 1 of the SPA, the Form D, the Registration Statement, the Offering Memorandum, and the Press Releases.

95.     Defendants knowingly, improperly, and intentionally made, or permitted to be made, false representations of fact and covenanted that that the Company would comply with its reporting requirements under the Exchange Act pursuant to the SPA.

96.     Euro Pacific and the Shareholders justifiably and detrimentally relied on Defendants' misrepresentations that the proceeds of the SPA would be used as capital for China Mining's expenditures, acquisition opportunities, and working capital.

97.     Euro Pacific and the Shareholders also justifiably and detrimentally relied on Defendants' covenant to timely file these reports with the SEC so that a market would exist for the Company's common stock.

98.     As a result of their reliance on Defendants' misrepresentations, Euro Pacific and the Shareholders were induced to invest $15,000,000 in the Company.

99.     Despite Defendants' representations regarding the use of SPA proceeds, Mr. Li illegally and fraudulently transferred to himself $2,800,000 of SPA proceeds shortly after the execution of the SPA.

100.    Despite Defendants' representations regarding the Company's reporting obligations, China Mining's last financial report filed with the SEC was a 10-Q for the quarter ending March 31, 2014.

19

101.     As a direct and proximate result of Mr. Li's misappropriation, he deprived China Mining of a substantial capital infusion that was intended to finance the Company's expenditures, acquisition opportunities, and working capital.

102.     As a direct and proximate result of China Mining's failure and refusal to report under the Exchange Act, Defendants have caused the issued securities to be completely illiquid due to market participants' inability to ascertain the present fair value of the Company's shares.

103.     As a direct and proximate result of Defendants' fraudulent inducement, Euro Pacific and the Shareholders have suffered and will continue to suffer damages. Defendants' breaches of the SPA have actually and proximately caused damage to Euro Pacific and the Shareholders of at least $1,000,000.00.

104.     As a direct and proximate result of Defendants' fraudulent inducement, Euro Pacific and the Shareholders are entitled to China Mining's books and records.

105.     As a direct and proximate result of Defendants' fraudulent inducement, Shareholders are entitled to an option to "put" their shares at fair market value.

### SEVENTH CAUSE OF ACTION
### (THE SHAREHOLDERS – VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST CHINA MINING)

106.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 105 as if fully set forth herein.

107.     Leading up to and after the execution of the SPA, officers, management, and agents of China Mining carried out a plan, scheme and course of conduct, which was intended to and did deceive the investing public —*i.e.* Euro Pacific and the Shareholders— regarding China Mining's ability and intent to perform under the SPA, including, but not limited

20

to, its reporting obligations and use of SPA proceeds. In furtherance of this unlawful scheme, plan, and course of conduct, China Mining took the actions set forth above, including, but not limited to, filing with the SEC and marketing to Euro Pacific and the Shareholders various deceptive documents in an attempt of fraudulently raise capital.

108.    Officers, management, and agents of China Mining directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and/or the facilities of a national securities exchange: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Euro Pacific and the Shareholders.

109.    Officers, management, and agents of China Mining employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure Euro Pacific and the Shareholders of China Mining's value and performance, which included the making of untrue statements of material facts and omitting material facts necessary in order to make the statements made about China Mining's ability and intent to perform under the SPA in the light of the circumstances under which they were made, not misleading. Officers, management, and agents of China Mining did not have a reasonable basis for their alleged false statements and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon Euro Pacific and the Shareholders leading up to and after the execution of the SPA.

110.    China Mining is liable for all materially false and misleading statements and omissions made leading up to and after the execution of the SPA, as alleged above, including

21

the false and misleading statements and omissions in, including, but not limited to, Section 4.2, 4.9, and Article 1 of the SPA, the Form D, and the Registration Statement, and the Offering Memorandum.

111.    China Mining is further liable for the false and misleading statements made by China Mining's officers, management, and agents in the Press Releases and during conference calls and at conferences with Euro Pacific and the Shareholders, as the maker of such statements and under the principle of respondeat superior.

112.    In addition to the duties of full disclosure imposed on China Mining as a result of the affirmative statements and reports made by its officers, management, and agents, or participation in the making of their affirmative statements and reports to Euro Pacific and the Shareholders, China Mining had a duty to promptly disseminate truthful information that would be material to investors, in compliance with GAAP and the integrated disclosure provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. §§ 210.01 et seq.) and S-K (17 C.F.R. §§ 229.01 et seq.) and other SEC regulations, including truthful, complete, and accurate information with respect to the Company's ability and intent to perform under the SPA, including, but not limited to, its reporting obligations and use of SPA proceeds, so that the Company's share price would be based on truthful, complete, and accurate information.

113.    The allegations above establish a strong inference that China Mining, as an entity, acted with corporate scienter leading up to and after the execution of the SPA, as its officers, management, and agents had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth because they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and/or omissions were done knowingly or with recklessness, and

22

without a reasonable basis, for the purpose and effect of concealing China Mining's ability and intent to perform under the SPA, including, but not limited to, its reporting obligations and use of SPA proceeds.

114. In ignorance of the fact that China Mining had no intention of complying with the SPA, and relying directly or indirectly on the false and misleading statements and omissions made by China Mining, or upon the integrity of the market in which the stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by China Mining but not disclosed in public statements by China Mining leading up to and after the execution of the SPA, China Mining fraudulently induced the Shareholders to invest in the company by participating in the SPA.

115. At the time of these misrepresentations and omissions, Euro Pacific and the Shareholders were ignorant of their falsity, and believed them to be true. Had Euro Pacific and the Shareholders known of the truth concerning China Mining's ability and intent to perform under the SPA, which was not disclosed by China Mining, the Shareholders would not have purchased or acquired their China Mining stock pursuant to the SPA.

116. By virtue of the foregoing, China Mining has violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. As a direct and proximate result of China Mining's wrongful conduct, the Shareholders suffered damages in connection with their respective purchases and/or acquisitions of China Mining stock.

**EIGHTH CAUSE OF ACTION**
**(THE SHAREHOLDERS – VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER AGAINST MR. LI)**

117. Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 116 as if fully set forth herein.

23

118.     Leading up to and after the execution of the SPA, Mr. Li carried out a plan, scheme, and course of conduct which was intended to and did deceive the investing public regarding China Mining's ability and intent to perform under the SPA, including, but not limited to, its reporting obligations and use of SPA proceeds.  In furtherance of this unlawful scheme, plan, and course of conduct, Mr. Li took the actions set forth above.

119.     *Inter alia*, Mr. Li: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's stock in an effort induce the Shareholders to invest in the company by participating in the SPA in violation of Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  Mr. Li is sued as a primary participant in the wrongful and illegal conduct charged herein.  Mr. Li is also sued as controlling persons of China Mining as alleged below.

120.     In addition to the duties of full disclosure imposed on Mr. Li as a result of their affirmative statements, Mr. Li had a duty to promptly disseminate truthful information that would be material to investors, in compliance with GAAP and the integrated disclosure provisions of the SEC as embodied in SEC Regulations S-X (17 C.F.R. §§ 210.01 et seq.) and S-K (17 C.F.R. §§ 229.01 et seq.) and other SEC regulations, including truthful, complete and accurate information with respect to the Company's ability and intent to perform under the SPA, including, but not limited to, its reporting obligations and use of SPA proceeds, so that the Company's share price would be based on truthful, complete and accurate information.

121.     Mr. Li, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated

24

in a continuous course of conduct to conceal adverse material information about China Mining's ability and intent to perform under the SPA, as specified herein.

122.   Mr. Li employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure Euro Pacific and the Shareholders of China Mining's value and performance, which included the making of untrue statements of material facts and omitting material facts necessary in order to make the statements made about China Mining's operations, financial condition, internal controls, and the Company's ability to perform under the SPA, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein.  Mr. Li additionally engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of China Mining common stock leading up to and after the execution of the SPA.

123.   Mr. Li's primary liability, and controlling person liability, also arises from the following facts: (i) Mr. Li was high-level executive and/or director, serving as President and CEO, at China Mining Leading up to and after the execution of the SPA and member of China Mining's management team or had control thereof; (ii) Mr. Li enjoyed significant personal contact and familiarity with other high-level executives and/or directors of high-level executive and/or director and was advised of and had access to other members of China Mining's management team, internal reports, and other data and information about China Mining's operations, financial condition, internal controls, operations, and the Company's ability to perform under the SPA at all relevant times; and (iii) Mr. Li was aware of China Mining's dissemination of information to the investing public that he knew or recklessly disregarded was materially false and misleading.

25

124.    Mr. Li had actual knowledge of the misrepresentations and omissions of material facts set forth above, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Mr. Li's material misrepresentations and/or omissions were made knowingly or recklessly and without a reasonable basis for the purpose and effect of concealing China Mining's ability and intent to perform under the SPA, including, but not limited to, its reporting obligations and use of SPA proceeds.  By concealing these material facts from investors, Mr. Li directly and indirectly induced the Shareholders to invest in the company by participating in the SPA.

125.    In ignorance of and relying directly or indirectly on the false and misleading statements made by Mr. Li, or upon the integrity of the market in which the stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Mr. Li but not disclosed in public statements by Mr. Li leading up to and after the execution of the SPA, the Shareholders purchased or acquired China Mining stock at artificially high prices and were damaged when that artificial inflation was removed from the price of China Mining stock as the truth of China Mining's use of the SPA proceeds was revealed and when the Company failed to file reports pursuant to the Exchange Act in violation of the SPA.

126.    At the time of these misrepresentations and omissions, Euro Pacific and the Shareholders were ignorant of their falsity, and believed them to be true.  Had Euro Pacific and the Shareholders known of the truth concerning China Mining's ability and intent to perform under the SPA, which was not disclosed by Mr. Li, the Shareholders would not have purchased or acquired their China Mining stock pursuant to the SPA.

127.    By virtue of the foregoing, MR. Li has violated Section 10(b) of the Exchange Act and Rule 10b-5.

26

128.    As a direct and proximate result of Mr. Li's wrongful conduct, the

Shareholders suffered damages in connection with their respective purchases and/or acquisitions

of China Mining stock under to the SPA.

**NINTH CAUSE OF ACTION**
**(THE SHAREHOLDERS – AGAINST MR. LI FOR VIOLATIONS OF**
**SECTION 20(A) OF THE EXCHANGE ACT)**

129.    Plaintiff repeats and realleges each and every allegation contained in

paragraph 1 through 128 as if fully set forth herein.

130.    Mr. Li acted as controlling persons of China Mining within the meaning of

Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level position as

president and CEO, and ownership and contractual rights, participation in and/or awareness of

the operations, financial condition, internal controls, and the Company's ability to perform under

the SPA, Mr. Li had the power to influence and control, and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the

various statements that Plaintiff contends are false and misleading.  Mr. Li was provided with

and had unlimited access to copies of the Company's reports, press releases, public filings, and

other statements that contain material misrepresentations prior to and/or shortly after these

statements were issued and had the ability to prevent the issuance of the statements or cause the

statements to be corrected.

131.    In particular, Mr. Li had direct and supervisory involvement in the day-to-

day operations of the Company and, therefore, is presumed to have had the power to control or

influence the particular transactions giving rise to the securities violations as alleged herein, and

exercised the same.

27

132.    As more particularly set forth above, China Mining and Mr. Li both violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his position as controlling person, Mr. Li is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, the Shareholders suffered damages in connection with their purchases of the Company's common stock under to the SPA.

**TENTH CAUSE OF ACTION**
**(THE SHAREHOLDERS ON BEHALF OF CHINA MINING – BREACH OF HIS**
**FIDUCIARY DUTY AGAINST LI – DERIVATIVE CLAIM)**

133.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 132 as if fully set forth herein.

134.    Euro Pacific, in its capacity as Investor Representative and attorney-in-fact for the Shareholders, allege various derivative causes of action pursuant to Federal Rule of Civil Procedure 23.1 on behalf of China Mining against Mr. Li, seeking to remedy his violations of the law, including breaches of fiduciary duties relating to events after the execution of the SPA and continued until the present day (the "Class Period") and that have caused substantial financial losses to China Mining.

135.    As president and CEO of China Mining, Mr. Li was a fiduciary of the Company and owed the Company a fiduciary duty of utmost loyalty and good faith. The relationship between Mr. Li and the Company was one of trust and confidence such that Mr. Li was duty-bound to act with scrupulous fairness and good faith in his dealings with the Company and to refrain from engaging in conduct to the Company's detriment or disadvantage.

28

136.    Mr. Li also had a duty to exercise care and good faith to ensure that the Company operated in a diligent, honest, and prudent manner, and ensure that the Company disseminated accurate, truthful, and complete information to the Shareholders.

137.    Mr. Li breached the fiduciary duties of care, loyalty, reasonable inquiry, oversight, and supervision and good faith by causing or allowing the Company to disseminate to the market materially misleading and inaccurate information through public filings and statements, including, but not limited to, the SPA, the Form D, the Registration Statement, the Offering Memorandum, and the Press Releases.  Additionally, Mr. Li failed to correct the Company's misrepresentations regarding its ability to fulfill its reporting obligations under the SPA and its use of SPA proceeds.

138.    As more particularly set forth above, China Mining's failure and refusal to report under the Exchange act has directly led to the illiquidity of the Company's common stock and market participants' inability to ascertain the present fair value of the Company's shares.

139.    Mr. Li further breached his duty of loyalty and good faith, committed significant corporate waste, and was unjustly enriched by his misappropriation of the $2,800,000 SPA offer proceeds for personal use, instead of using these funds as capital for China Mining's expenditures, acquisition opportunities, and working capital, as presented in the various SEC filings and marketing materials.  Mr. Li's misappropriation deprived China Mining of a substantial capital infusion that was intended to finance the Company's expenditures, acquisition opportunities, and working capital.

140.    Additionally, the substantial investment in Majestic, a sham company with no nexus to coal mining or brokering activities, has not been detailed in subsequent SEC filings and has no business purpose.

29

141.    These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

142.    As a direct and proximate result of Mr. Li's intentional breach and/or reckless disregard of his fiduciary duties to the China Mining described above, the Company has been directly and substantially injured.

143.    Euro Pacific, in its capacity as Investor Representative and attorney-in-fact for the Shareholders, seeks damages and other relief for the Company, in an amount of at least $1,000,000.00.

144.    The Shareholders have held their shares of common stock in China Mining during the Class Period.

145.    Plaintiff will adequately and fairly represent the interest of the Company in enforcing and prosecuting its rights.

146.    Plaintiff did not make demand on the board of directors of the Company (the "Board of Directors") to bring this action on behalf of the Company because such demand would have been a futile, wasteful, and useless act for the following reasons:

(a)    The Board of Directors authorized, approved, ratified, or have failed to rectify some or all of the misrepresentations in the SPA, the Form D, the Registration Statement, the Offering Memorandum, and the Press Releases;

(b)    The Board of Directors authorized, approved, ratified, or have failed to rectify the Company's failure and refusal to file reports with the SEC under Exchange Act in violation of the SPA;

(c)    The Board of Directors authorized, approved, ratified, or have failed to rectify Mr. Li's misappropriation of SPA proceeds;

30

(d)     The Board of Directors participated in, approved, or through abdication of duty, permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Shareholders and/or acted with negligence and gross negligence disregarded the wrongs complained of herein, and therefore are not disinterested parties; and

(e)     The Board of Directors did not require Mr. Li to immediately disgorge all of the misappropriated SPA proceeds or take further action to protect the interest of the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     Directing China Mining to provide Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, with copies of the books and records for inspection in New York;

2.     Awarding Euro Pacific, in its capacity as Investor Representative and attorney-in-fact for the Shareholders, an option to "put" their shares in China Mining at fair market value;

3.     Granting a mandatory injunction requiring China Mining to report under the Exchange Act pursuant to the SPA;

4.     Order Defendants to disgorge all profits earned as a result of their misappropriation of SPA offering proceeds;

5.     Awarding Euro Pacific, individually, damages of at least $1,000,000.00 to compensate Plaintiff for all their business losses and reputational damages, plus interest;

31

6.      Awarding compensatory damages in favor of Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, against Defendants, jointly and severally, in an amount sufficient to compensate Plaintiff for all losses and damages, plus interest;

7.      Awarding compensatory damages in favor of Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, against Mr. Li in an amount sufficient to compensate Plaintiff for all losses and damages, plus interest;

8.      Awarding Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, punitive damages against Defendants;

9.      Awarding of Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, attorneys' fees and costs of suit incurred herein; and

10.     Awarding Euro Pacific, individually and in its capacity as Investor Representative and attorney-in-fact for the Shareholders, such other and further relief as this Court deems just and proper.

32

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated:    June 5, 2015
          New York, New York

                    **ANDERSON KILL, P.C.**

                    David Graff, Esq.
                    Christopher L. Ayers, Esq.
                    Rachael Kierych, Esq.
                    1251 Avenue of the Americas
                    New York, NY 10020
                    (212) 278-1000
                    Attorney for Plaintiffs

33

## <u>VERIFICATION OF COMPLAINT</u>

STATE OF CONNECTICUT   )
                             ) SS:
COUNTY OF FAIRFIELD     )

       Peter M. Chema, hereby affirms under penalty of perjury as follows:

       1.    I am authorized by the Euro Pacific Capital Inc. to execute, and am executing, this verification on behalf of the Euro Pacific Capital Inc.

       2.    I have read the foregoing Verified Complaint, and the facts recited therein are true and correct to the best of my knowledge, information, and belief.

                                   Peter M. Chema

AFFIRMED TO AND SUBSCRIBED before
me this ___ day of June 2015

                  Notary Public

**Marion Lanice Miller**
*Notary Public*
*My Commission Expires Sept. 30, 2017*

34