UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:

EURO PACIFIC CAPITAL, INC.,           :     15 Civ. 4636 (CM) (JCF)
Individually and as Investor          :
Representative and attorney-in-fact   :         REPORT AND
for ALEXANDER AND YANA GALUZ,         :      RECOMMENDATION
et al.,                               :

                                      :
            Plaintiffs,               :

                                      :
      - against -                     :

                                      :
U.S. CHINA MINING GROUP, INC., and    :
HONGWEN LI,                           :

                                      :
            Defendants.               :

- - - - - - - - - - - - - - - - - - -:

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 12/15/16

TO THE HONORABLE COLLEEN McMAHON, Chief Judge:

In this action, plaintiff Euro Pacific Capital, Inc. ("Euro Pacific"), alleges a number of causes of action in connection with a Securities Purchase Agreement among the plaintiff, a number of investors for whom Euro Pacific acted as Investor Representative (the "Shareholders"), and defendant U.S. China Mining Group, Inc. ("China Mining"). The Honorable Collen McMahon, Chief Judge, granted judgment by default against China Mining and referred the case to me to recommend a remedy. I held an inquest on October 27, 2016; China Mining did not appear. The following findings are therefore based on evidence presented at the hearing and information submitted by the plaintiffs. For the reasons set forth below, the court should order the defendant to buy out the Shareholder plaintiffs' shares at a price of $11.43 per share. In

addition, the plaintiffs should be granted attorneys' fees and costs in the amount of $108,718.79.

<u>Background</u>

China Mining, a publicly-held company incorporated in Nevada and headquartered in Florida, develops and mines coal properties in the People's Republic of China ("P.R.C."). (Complaint, ¶¶ 2, 6, 11-14; Affidavit of Peter Chema dated Aug. 31, 2016 ("Chema Aff."), ¶¶ 4-5; Affirmation of David Graff dated Aug. 31, 2016 ("Graff Aff."), ¶ 2). Mr. Li, President of CEO of China Mining, resides in the P.R.C. (Complaint, ¶ 3). Euro Pacific is an investment company incorporated in California with its principal place of business in Connecticut. (Complaint, ¶ 1). In January 2011, Euro Pacific, in its own right and as Investor Representative for scores of investors (the "Shareholders"), entered into the Securities Purchase Agreement with China Mining, by which the Shareholders "purchased an aggregate of 3,750,000 units of [China Mining] at a purchase price of $4.00 per unit," for an aggregate purchase price of $15,000,000.00. (Complaint, ¶ 15; Chema Aff., ¶ 6; Graff Aff., ¶ 3; Securities Purchase Agreement dated Jan. 7, 2011 ("Agreement"), attached as Exh. 1 to Chema Aff., § 2.1 & Exh. A). Pursuant to the Agreement, Euro Pacific is the agent and attorney-in-fact for the Shareholders, with authority to act on their behalf. (Complaint, ¶ 16; Chema Aff., ¶ 7; Agreement at 1

2

& § 2.6).  Euro Pacific is also a third-party beneficiary of the Agreement, and has "all of the rights of an 'Investor.'" (Agreement, § 6.8).

In the Agreement, China Mining promised, among other things, to file all reports required by the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq. (Agreement at 2 & § 4.2).  Between May 2012 and August 2014, China Mining filed with the Securities Exchange Commission eight notifications of its inability to file its required annual and quarterly reports (respectively, "10-Ks" and "10-Qs").  (Complaint, ¶ 19).  The last 10-Q or 10-K that the company submitted was its 10-Q for the quarter ending March 31, 2014, which it filed in May 2014. (Complaint, ¶ 23).  "Since then, China Mining has refused to provide any reports either publicly, to Euro Pacific, or to the Shareholders."  (Complaint, ¶ 23; Chema Aff., ¶ 9).

Euro Pacific filed its complaint in June 2015, alleging common law claims of breach of contract, breach of covenant, breach of the covenant of good faith and fair dealing, fraud, and fraudulent inducement against both defendants, as well as claims alleging violations of the Exchange Act and a derivative claim on behalf of China Mining for breach of fiduciary duty against Mr. Li. (Complaint, ¶¶ 47-146).  It requested, among other remedies, "an option to 'put' [the Shareholders'] shares in China Mining at fair

market value." (Complaint at 31). The Complaint was served on the Secretary of State of the State of Nevada, China Mining's authorized representative, on July 10, 2015. (Affidavit of Service filed July 23, 2015). The plaintiff filed a motion for a default judgment against both defendants in November 2015; however, Judge McMahon allowed Euro Pacific to withdraw the motion in December 2015, after it learned that it had served the wrong Hongwen Li. (Letter of Christopher L. Ayers dated Dec. 8, 2015; Memorandum Endorsement dated Dec. 8, 2015). In January 2016, Euro Pacific moved for a default judgment against China Mining, alone. Judge McMahon sought supplemental briefing addressed to establishing federal subject matter jurisdiction over the action. (Order dated Feb. 16, 2016). In response, the plaintiffs voluntarily dismissed the claims of twenty-seven shareholders who would have destroyed diversity jurisdiction. (Notice of Voluntary Dismissal without Prejudice Pursuant to FRCP 41(a)(1)(A)(i) dated March 17, 2016; Plaintiffs' Supplemental Brief in Further Support of Motion for Default Judgment at 7-8; Affidavit of Peter Chema dated March 17, 2016, ¶¶ 4-5 & Exh.). Judge McMahon granted the motion, finding that the plaintiff had established diversity jurisdiction "for purposes of the [] application" for default judgment, but expressed serious doubt about the availability of the "put" remedy requested. (Order dated June 7, 2016 ("6/7/16

4

Order"), at 1-2).   She consequently referred the case to me to hold an inquest and recommend the appropriate remedy.   (6/7/16 Order at 2).

Discussion

  A.   Liability[1]

  Where a defendant has defaulted, all of the well-pleaded facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.   See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Keystone Global LLC v. Auto Essentials, Inc., No. 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015). Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." Jemine v. Dennis, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012); see also GAKM Resources LLC v. Jaylyn Sales Inc., No. 08 Civ. 6030, 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009).   Euro Pacific presses only its breach of contract claim here.   (Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"), ¶¶ 18-23).   "Under New York law, the elements of a cause of action for breach of contract are: (1) the existence of a contract, (2)

---

[1] As noted above, Judge McMahon determined that subject matter jurisdiction is proper for the purposes of proceedings in connection with the default judgment.   (6/7/16 Order at 1).   I therefore do not address the issue here.

performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach."[2] Turner v. Temptu Inc., 586 F. App'x 718, 720 (2d Cir. 2014).   Euro Pacific properly pleads each of these elements in its complaint, alleging the existence of a contract, plaintiff's performance, China Mining's breach, and consequent damages.   (Complaint, ¶¶ 15, 18, 21-25, 47-50, 52, 54).

B.   Remedy

1.   The "Put" Remedy

Euro Pacific argues, and common sense confirms, that China Mining's failure to file its required financial reports caused "complete illiquidity of [the relevant] securities" because it became impossible for investors to value the stock.   (Graff Aff., ¶¶ 4-5, 21; Chema Aff., ¶ 10; Proposed Findings, ¶ 8).   The breach of the Agreement, then, has rendered the securities effectively valueless.   The question is, however, whether the plaintiff's suggested "put" option -- a judicially-ordered buy-out of the Shareholders' securities by China Mining -- is an appropriate remedy.[3]

---

[2] The Agreement is governed by New York law.   (Agreement, § 6.9).

[3] In its Complaint, Euro Pacific sought other remedies, including disgorgement of profits, a mandatory injunction, and punitive damages.   (Complaint at 31-32).   In addition, it appears

But this raises a preliminary question (not briefed by the plaintiff): what state's laws govern whether a court-ordered buy-out is an available remedy?  Euro Pacific appears to assume that New York law is applicable (although it relies almost exclusively on cases applying Delaware law, presumably because of Delaware's pre-eminence in the area of corporate law).  (Graff Aff., ¶¶ 18, 22 n.1, 23 & Exhs. 5-11).  To be sure, the contract chooses New York law for "[a]ll questions concerning the construction, validity, enforcement[,] and interpretation of th[e] Agreement . . . without regard to the principles of conflicts of law thereof."  (Agreement, § 6.9).   However, this question -- the suitability of a buy-out remedy -- does not derive from the Agreement itself.  Rather, "the forced purchase of stockholdings implicates the internal affairs of a corporation."  Hilton Head Holdings b.v. v. Peck, No. 11 Civ. 7768, 2012 WL 613729, at *6 (S.D.N.Y. Feb. 23, 2012).  And "[u]nder the New York choice of law

---

to have sought the appointment of a "special purpose receiver." (6/7/16 Order at 2).  The plaintiff seems to have abandoned those requests, although it represents that, if the Court enters a judgment enacting Euro Pacific's preferred buy-out remedy, it may seek to have a receiver appointed once that judgment is domesticated in Nevada (the state of China Mining's incorporation) who would then pursue all of that company's assets (up to the amount of the judgment).  (Transcript of Oral Argument dated Oct. 27, 2016 ("Tr.") at 22-23).  Euro Pacific has represented that the appointment of a receiver would be a question for a Nevada court rather than for this Court.  (Tr. at 24).

rules, the internal affairs of a corporation are governed by the law of the state of incorporation." Id. These principles indicate that Nevada law should govern this question. Fortunately, it appears that the law of both states will countenance a court-ordered buy-out in the proper circumstances. See Hollis v. Hill, 232 F.3d 460, 471-72 (5th Cir. 2000) (applying Nevada law "to determine the remedies available" and approving court-ordered buy-out of plaintiff's shares); Bedore v. Familian, 125 P.3d 1168, 1172-73, 122 Nev. 5, 11-13 (2006) (court may order buy-out via auction where no lesser remedy will suffice, such as where company has "abandoned the business"); In re Wiedy's Furniture Clearance Center Co., 108 A.D.2d 81, 85, 487 N.Y.S.2d 901, 904 (3d Dep't 1985) (court "not preclude[d] . . . from directing a buy-out of petitioner's interest in [the company]"); Schiff v. China Nutfruit Group Ltd., Index No. 151540/2014 (New York County Sup. Ct. Jan. 21, 2015), judgment attached as Exh. 11 to Graff Aff., ¶ 2. For the purposes of this dispute, then, a buy-out is an available remedy.

It is also an appropriate remedy here. As noted, China Mining's failure to file the required financial statements has drained the market for the Shareholders' securities. Euro Pacific therefore suggests an analogy to holders of shares in closely-held corporations, who have "no ability to sell [] shares and receive

8

fair value." (Graff Aff., ¶ 26). In that situation, courts applying both Nevada law and New York law have ordered buy-outs of a shareholder's securities. In Hollis, for example, the Nevada company at issue had only two shareholders. 232 F.3d at 463. One of them, through oppressive conduct that breached his fiduciary duties, effectively eviscerated the value of the other shareholder's investment. Id. at 471. The appellate court affirmed the district court's judicially-ordered buy-out (while recognizing it as a harsh remedy). Id. at 471-72. In In re Weidy's Furniture Clearance Center, the majority shareholder in a family-owned business froze out a minority shareholder, firing him from his management position, locking him out of the company's premises, and publishing a notice in local newspapers announcing that the minority shareholder was no longer associated with the business. 108 A.D.2d at 82, 487 N.Y.S.2d at 902. The minority shareholder sought dissolution of the corporation, but the trial court, although finding that the minority shareholder had been subject to oppressive conduct, instead appointed an appraiser "to determine the fair value of [the minority shareholder's] one-third share of [the company], which was to be awarded to him." Id. at 83, 487 N.Y.S. 2d at 903. The Appellate Division approved the remedy, noting that it allowed the minority shareholder to receive "full credit for his ownership interest in the [company]." Id.

at 85, 487 N.Y.S.2d at 904. Indeed, "[m]odern courts, usually relying on their inherent equitable powers, increasingly have ordered buy-outs of a shareholder's interest by the corporation or the other shareholders even in the absence of specific statutory authorization." F. Hodge O'Neal & Robert B. Thompson, Oppression of Minority Shareholders and LLC Members, § 7.19.

In addition, Euro Pacific has presented some evidence that courts in Delaware and elsewhere have ordered buy-outs on cases similar to this one, where "shareholders [] were defrauded by Chinese companies that raised capital via the U.S. markets and then absconded with the funds to China." (Graff Aff., ¶¶ 18-19 & Exhs. 5-11). Although most of this evidence does not present the courts' reasoning for approval of the remedy, in one case in the Delaware Court of Chancery, the Master recommended approval of a "put" right, reasoning that the defendant corporation's

> disregard for the plaintiff's rights as a stockholder []
> left the plaintiff with essentially no way to exit the
> company and, therefore, although extraordinary, . . .
> granting a put right . . . allows the plaintiff to exit
> its investment in a company that has shown it does not
> care to recognize the rights of its stockholders.

(Transcript of Hearing in Pope Investments, LLC v. Shengtai Pharmaceutical, Inc., Civil Action No. 9122 (Del. Ch. April 2, 2014), attached at Exh. 10 to Graff Aff., at 18). Similarly, China Mining's failure to file financial reports has left the

Shareholder plaintiffs "with essentially no way to exit the company," and I agree that a court-ordered buy-out is appropriate.

2.   Fair Market Value

Under New York law, "damages for breach of contract should put the plaintiff in the same position [it] would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003).  The fair market value of the shares is therefore an appropriate measure of damages, because that is the price at which the plaintiff would have been able to sell the shares had China Mining abided by the contract.  Where, as here, the value cannot be readily determined, expert testimony may be used to establish that value. See, e.g., Credit Suisse First Boston v. Utrecht-America Finance Co., 84 A.D.3d 579, 580, 923 N.Y.S.2d 482, 483 (1st Dep't 2011).

The plaintiff presented evidence from Thomas Tan, Euro Pacific's managing director of investment banking, who has valued Chinese companies on numerous occasions.  (Tr. at 6-8).  In valuing China Mining, Mr. Tan relied on the company's most recent 10-Q filing (for the quarter ending March 31, 2014) to determine a "book value" of $77.5 million.  (Tr. at 12-13; U.S. China Mining Group Inc. Form 10-Q dated May 20, 2014, attached as Exh. 2 to Chema Aff.).  That computes to a book value per share of approximately $4.11.  (Tr. at 13-14).  He then found five

companies he determined to be comparable -- all mining companies, three of them Chinese, two American -- and determined their price-to-book value (which is calculated by dividing the stock price by the book value per share). (Tr. at 14-15; Chema Aff., ¶ 16; Yahoo Finance data for comparator companies, attached as Exhs. 3-7 to Chema Aff.). Averaging those resulted in a price-to-book value of 2.78. (Tr. at 15; Chema Aff., ¶ 16). To determine the fair market value per share of China Mining, Mr. Tan multiplied the average price-to-book value of the comparable companies by China Mining's book value per share, to get a price per share of $11.43. (Tr. at 16; Chema Aff., ¶¶ 17-18). I therefore recommend that Euro Pacific be allowed to "put" the Shareholder plaintiffs' shares at that price.

C.   Attorneys' Fees

The Agreement includes an attorneys' fees provision allowing the prevailing party in an action based on the contract to recover from the other party "its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation[,] and prosecution" of the action. (Agreement, § 6.9). Euro Pacific requests $128,563.95 in attorneys' fees and costs.

In order to determine the appropriate fee award, a "presumptively reasonable fee" is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended

on the case." Sandoval v. Materia Bros. Inc., No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013); see also Millea v. Metro-North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 189-90 (2d Cir. 2008).

    1.   Hours Reasonably Expended

A party seeking attorneys' fees must present "contemporaneous time records that show 'for each attorney the date, the hours expended, and the nature of the work done.'" Ontel Products Corp. v. Amico International Corp., No. 07 Civ. 7356, 2008 WL 4200164, at *5 (S.D.N.Y. Aug. 19, 2008) (quoting New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)); see also Scott v. City of New York, 643 F.3d 56, 58 (2d Cir. 2011) (per curiam).  In assessing whether the hours worked were reasonable, courts in this district often take into account the "straightforward nature of the work performed [and] the relative simplicity of the issues involved." Palacios v. Z & G Distributors, Inc., No. 11 Civ. 2538, 2013 WL 4007590, at *6 (S.D.N.Y. Aug. 6, 2013); see also Ibarra v. HSCS Corp., No. 10 Civ. 5109, 2012 WL 3964735, at *4 (S.D.N.Y. Sept. 10, 2012).

Counsel for Euro Pacific asserts that the hours expended "are reasonable in light of the substantial work that was conducted," which included reviewing transaction documents, conducting

13

research on China Mining and on the plaintiff Shareholders, drafting the Complaint, and filing the motion for default judgment, supplemental brief, and proposed findings of fact and conclusions of law. (Graff Aff., ¶ 33). I have some concerns about the time spent on this matter. This was, after all, a case in which the defendants never appeared. And, although it is true that counsel filed a number of documents in this action, some of them were occasioned by counsel's errors. For example, because the Complaint failed to properly allege diversity jurisdiction, Judge McMahon required supplemental briefing; because the wrong Hongwen Li was served, the first motion for default judgment was withdrawn. Moreover, the case appears to have been significantly overstaffed. As discussed below, thirteen timekeepers worked on this action, among them three partners and five associates. (Time Records at 14; Summary of Anderson Kill P.C.'s Fees and Costs, attached as Exh. 12 to Graff Aff.). Finally, the timekeeper charging the second highest number of hours was a partner. (Time Record at 14). I therefore recommend deducting 15% from the hours of each timekeeper.[4] See Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777,

---

[4] Even with this deduction, an uncommonly large number of hours were expended on this default case. However, a sizable proportion of those hours were spent on the supplemental briefing on jurisdiction (Time Records at 6-10), which was a complicated endeavor in part because of the number of Shareholders whose domicile had to be determined.

14

2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012) ("In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, as a practical means of trimming the fat from a fee application." (internal quotation marks omitted) (quoting Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007))).

### 2. Reasonable Hourly Rate

Determination of what constitutes a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel." Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005).  The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)); see also Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009).  The relevant community in this case is the Southern District of New York.  Arbor Hill, 522 F.3d at 190; Rosado v. City of New York, No. 11 Civ. 4285, 2012 WL 955510, at *4 (S.D.N.Y.  March 15, 2012).

Euro Pacific seeks reimbursement for the work of thirteen timekeepers from the firm Anderson Kill P.C.: three partners --

15

Helen J. Williamson, David Graff, and Allen Wolff -- billed at $375.00 per hour; five associates -- Rachael Kierych, Christopher Paolino, Alexander Litt, Christopher Ayers, and Matthew Silverstein -- billed at $250.00 per hour; four paralegals, three of whom -- Nathan J. Donlon, Harris Gershman, and Dale M. Brown[5] -- billed at $245.00 per hour and one of whom -- Ryan Reckhow -- billed at $135.00 per hour; and another employee -- Elise Balaban -- who billed at $200.00 per hour.  (Time Records at 14; Summary of Anderson Kill P.C.'s Fees and Costs, attached as Exh. 12 to Graff Aff.).

The rates charged for the attorneys are reasonable.[6]  See, e.g., Thor 725 8th Avenue LLC v. Goonetilleke, 14 Civ. 4968, 2015 WL 8784211, at *11 (S.D.N.Y. Dec. 15, 2015) (approving rates of $375.00 to $450.00 per hour for partners and $275 per hour for associates in breach of contract case).  In addition, $135.00 per hour is reasonable for a paralegal: "In this District, the market value for paralegals' time ranges from $50 to $150 per hour

---

[5] Mr. Brown's position is not clear from the papers, but I assume he is a paralegal because his billing rate is the same as that of Mr. Donlon and Mr. Gershman.

[6] Best practices dictate that, along with any fee application, the applicant provide information about the experience of at least each of the attorney timekeepers for whom it seeks reimbursement. That information was not provided here.  I am not requiring supplemental submissions only because the hourly rates are obviously reasonable in this market.

depending on experience levels."  <u>Id.</u> (quoting <u>Spalluto v. Trump</u> <u>International Hotel & Tower</u>, No. 04 Civ. 7497, 2008 WL 4525372, at *14 (S.D.N.Y. Oct. 2, 2008)).  Consequently, the $245.00 per hour charged by Mr. Donlan and Mr. Gershman is not reasonable, and their rates should be reduced to $150.00 per hour.  There is, in addition, the problem of Ms. Balaban, an employee whose position is unknown.  I recommend setting her hourly rate at $135.00.

| Timekeeper | Position | Rate | Hours | Total |
|---|---|---|---|---|
| A. Litt | Associate | $250.00 | 110.30-16.54=93.76 | $23,440.00 |
| A. Wolff | Partner | $375.00 | 109.90-16.48=93.42 | $35,032.50 |
| C. Ayers | Associate | $250.00 | 66.70-10.00=56.70 | $14,175.00 |
| C. Paolino | Associate | $250.00 | 72.60-10.89=61.71 | $15,427.50 |
| D. Brown | Paralegal | $150.00 | 3.90-0.58=3.32 | $498.00 |
| D. Graff | Partner | $375.00 | 11.60-1.74=9.86 | $3697.50 |
| E. Balaban | Unknown | $135.00 | 3.50-0.52=2.98 | $402.30 |
| H. Gershman | Paralegal | $150.00 | 5.30-0.80=4.50 | $675.00 |
| H. Williamson | Partner | $375.00 | 4.40-0.66=3.74 | $1,402.50 |
| M. Silverstein | Associate | $250.00 | 31.00-4.65=26.35 | $6,587.50 |
| N. Donlon | Paralegal | $150.00 | 1.00-0.15=0.85 | $127.50 |
| R. Kierych | Associate | $250.00 | 11.60-1.74=9.86 | $2,465.00 |
| R. Reckhow | Paralegal | $135.00 | 1.00-0.15=0.85 | $114.75 |
| **Total** | | | | **$104,045.05** |

3.   Costs

Euro Pacific seeks to recover $4,967.45 in costs for research, transportation, mailing, copying, service of papers, filing fees, witness fees, and meals.  (Time Records at 24).  Most of these costs are compensable  Siegel v. Bloomberg L.P., No. 13 Civ. 1351, 2016 WL 1211849, at *15 (S.D.N.Y. March 22, 2016) (fees for service reasonable); Reiseck v. Universal Communications of Miami, Inc., No. 06 Civ. 777, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014) (expenses for travel, mailing, photocopies, witness fees, and research acceptable).  However, Euro Pacific shall not be recover $75.00 for service of papers on the incorrect Hongwen Li.  (Proof of Service dated July 21, 2015; Time Records at 18).  In addition, some of the charges for meals are troubling.  For example, on March 31, 2016, there are three charges denominated "Dinner" and totaling more than $180.00 for a single attorney.  (Time Records at 22).  While expenses for meals are routinely recoverable, see Reiseck, 2014 WL 5374684, at *8, there is a limit to that axiom. Here, a total of $437.42 is attributable to in-office meals and "meals away."  (Time Records at 24).  The plaintiff should recover 50% of that, or $218.71.  In total, I recommend that Europacific receive $4,673.74 as reimbursement for costs.

Conclusion

For the foregoing reasons, I recommend that judgment be

18

entered granting Euro Pacific as Investor Representative for the plaintiff Shareholders the right to "put" their shares in China Mining at $11.43 per share.   I further recommend granting the plaintiff's request for attorneys' fees and costs in part, in the following amounts: $104,045.05 in attorneys' fees and $4,673.74 in costs.   Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.   Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Colleen McMahon, Room 2550, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007.   Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          December 15, 2016

Copies transmitted this date:

Christopher L. Ayers, Esq.
David Graff, Esq.
Alexander Litt, Esq.
Anderson Kill PC
1251 Avenue of the Americas
New York, NY 10020
(via ECF)

U.S. China Mining Group, Inc.
c/o Nevada Secretary of State (as Authorized Representative)
202 N. Carson St.
Carson City, NV 89701
(via U.S. Mail)

U.S. China Mining Group, Inc.
15310 Amberly Drive, Suite 250
Tampa, FL 33647
(via U.S. Mail)